673 So.2d 445 (1995)
James Anthony BRUNO
v.
DIRECTOR, DEPARTMENT OF PUBLIC SAFETY.
2940393.
Court of Civil Appeals of Alabama.
August 25, 1995.
Rehearing Denied September 29, 1995.
Certiorari Denied December 29, 1995.
John T. Kirk, Montgomery, for Appellant.
Jack M. Curtis, Montgomery, for Appellee.
Alabama Supreme Court 1950057.
MONROE, Judge.
This is a driver's license suspension case.
The record reveals the following undisputed facts. In July 1993, James Anthony Bruno entered a plea of nolo contendere in Georgia to the charge of driving under the influence of alcohol (DUI), with a .08 percent blood alcohol content, a per se criminal offense in that state.[1] In November 1993, the Alabama Department of Public Safety (DPS) notified Bruno that his license had been suspended for a period of 90 days. Thereafter, Bruno filed a complaint/mandamus petition against the director of DPS, alleging that the suspension was unlawful and seeking a stay of the suspension and a reinstatement of his license.
*446 Following a hearing, the trial court held that Bruno's license had been lawfully suspended, and it dismissed his petition for a writ of mandamus. Bruno appeals, arguing that the trial court erred in upholding the suspension of his license.
The statute under which the State proceeds is § 32-5A-195(e), Ala.Code 1975, which provides:
"The Director of Public Safety is hereby authorized to suspend or revoke the license of any resident of this state or the privilege of a nonresident to drive a motor vehicle in this state upon receiving notice of conviction of such person in another state of any offense therein which, if committed in this state, would be grounds for the suspension or revocation of the license of a driver."
(Emphasis added.)
A person may be convicted of DUI in Alabama upon proof of circumstances described in Ala.Code 1975, § 32-5A-191, which provides:
"(a) A person shall not drive or be in actual physical control of any vehicle while:
(1) There is 0.10 percent or more by weight of alcohol in his or her blood;
(2) Under the influence of alcohol."
Additionally, § 32-5A-191(c) provides that "on a first conviction, the Director of Public Safety shall suspend the driving privilege or driver's license of the person so convicted for a period of 90 days." Under the statute, "a plea of nolo contendere accepted by the court, the payment of a fine, a plea of guilty or a finding of guilt of a traffic violation charge, shall be equivalent to a conviction regardless of whether the penalty is rebated, suspended or probated." § 32-5A-195(i), Ala.Code 1975. Under this statute, the trial court accepted Bruno's plea of nolo contendere as the equivalent of a conviction.
However, driving with a .08 percent blood alcohol content is not a per se criminal offense in Alabama. The level of blood alcohol content required by § 32-5A-191(a)(1) to constitute per se criminal liability is .10 percent. Therefore, in Alabama, driving with a blood alcohol content of .08 percent, taken alone, is not grounds for suspension or revocation of a driver's license. For a driver to be found guilty of DUI at a .08 percent blood alcohol content, there must be additional evidence showing that the driver was driving while "[u]nder the influence of alcohol." § 32-5A-191(a)(2), Ala.Code 1975. There is no such evidence to show that Bruno was "[u]nder the influence" or intoxicated.
Furthermore, Bruno was led to believe that by pleading nolo contendere he was not admitting guilt, but was choosing to pay a fine levied by the court in lieu of contesting the charge. Indeed, the Georgia court that accepted his plea determined in its findings of fact that it was "in the best interest of justice" for Bruno to retain his driving privileges.
For the purposes of imposing sanctions in Alabama for conduct in another state, whether there has been a "conviction" is measured by the conduct constituting the offense, rather than the treatment of such conduct, or the sentence imposed, by the other state. The conduct constituting the offense is controlling. See, e.g., Thompson v. State, 525 So.2d 820 (Ala.1985) (felony conviction from another state will be considered a felony when imposing punishment in Alabama only if the conduct is also a felony under Alabama law).
Because the conduct for which Bruno entered a plea of nolo contendere, "if committed in this state," would not be grounds for suspension or revocation of the license under § 32-5A-195(e), we conclude that the trial court erred in affirming the Alabama Department of Public Safety's suspension of Bruno's license. This court is attuned to the interests and concerns of the Department of Public Safety in its efforts to rid our highways of the hazards of drunken driving. We are sensitive that the Department, and all those individuals who endeavor to enforce our drunk driving laws, seek to further the protection of the public at large. Nevertheless, we are unable, under the statute that prescribes punishment for such actions, to uphold a penalty where there is no record of conduct that would be punishable in Alabama.
*447 The judgment of the trial court is therefore reversed and this cause is hereby remanded.
REVERSED AND REMANDED.
ROBERTSON, P.J., and YATES, J., concur.
THIGPEN and CRAWLEY, JJ., dissenting.
THIGPEN, Judge, dissenting.
Because I believe that the Alabama court had the authority to suspend Bruno's license for 90 days, I must respectfully dissent. While I agree with much of Judge Crawley's dissent, I also feel compelled to address the issues presented by Bruno.
It is well established that an accepted plea of nolo contendere is equivalent to a final conviction for the purpose of suspending or revoking a driver's license. Wolfsberger v. Wells, 528 So.2d 854 (Ala.Civ.App.1988); see also Ala.Code 1975, § 32-5A-195(i). Ala. Code 1975, § 32-5A-195(e), states:
"The Director of Public Safety is authorized to suspend or revoke the license of any resident of this state or the privilege of a nonresident to drive a motor vehicle in this state upon receiving notice of such conviction of such person in another state of any offense therein which, if committed in this state, would be grounds for the suspension or revocation of the license of a driver."
Furthermore, in pertinent part, Ala.Code 1975, § 32-5A-191, states:
"(a) A person shall not drive or be in actual physical control of any vehicle while:
"(1) There is 0.10 percent or more by weight of alcohol in his or her blood;
"(2) Under the influence of alcohol."
Subsection (c) provides that upon the first conviction, the director "shall suspend the driving privilege or driver's license of the person so convicted for a period of 90 days." Clearly, the accepted nolo contendere plea was a conviction that could be used to suspend Bruno's license. Wolfsberger, 528 So.2d 854; see also Alabama Dep't of Public Safety v. Bell, 646 So.2d 137 (Ala.Civ.App.1994). (Emphasis added.)
In brief, Bruno also argues that Alabama seeks further punishment through a license suspension which would constitute double jeopardy. I find that argument, however, to be without merit, and the case cited by Bruno in support of his contention to be clearly distinguishable. Bruno characterizes the suspension of his license as an impermissible second punishment, via a successive prosecution in Alabama for the Georgia offense, citing Dep't of Revenue of Montana v. Kurth Ranch, ___ U.S. ___, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994). Kurth, which is a tax case, noted that a second punishment, such as a drug tax, must be imposed during the first prosecution or not at all. Here, even if Bruno had persuasively argued that the suspension is punishment, the Georgia court, while it may have had the authority to suspend Bruno's driving privileges on Georgia roadways based upon the conviction, had no authority to suspend or prevent the suspension of Bruno's driver's license in the licensing state, in accordance with the laws of that state.
The Department of Public Safety cites United States v. Halper, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), to support its position that the suspension of one's driver's license is a civil sanction imposed for a remedial purpose, rather than for punishment in violation of the Double Jeopardy Clause. Halper held that the purpose of the sanction must be evaluated to determine whether it is a criminal punishment. This court has held that the purpose of a statute like § 32-5A-195 is not to punish the driver, but to protect the public. Mechur v. Director, Dep't of Public Safety, 446 So.2d 48 (Ala.Civ.App.1984).
Bruno did not pursue an administrative hearing, pursuant to Ala.Code 1975, § 32-5A-195(l); instead, he sought relief by filing a petition in the circuit court. Pursuant to Ala.Code 1975, § 32-5A-195(q), one may petition directly to the circuit court for a de novo hearing to present proof regarding the suspension. See Chambers v. Director of Dep't of Public Safety of Alabama, 414 So.2d 131 (Ala.Civ.App.1982). Therefore, Bruno's petition in circuit court was not an appeal *448 from the Director's suspension of his license, and the trial court was not called upon to review the Director's action. See Ex parte State ex rel. Sullivan, 262 Ala. 188, 78 So.2d 322 (1955), wherein our Supreme Court detailed the nature of the proceeding in the circuit court.
Bruno's petition sought a judicial determination regarding the suspension of his license, or, alternatively, he sought a writ of mandamus to reinstate his license and strike all allegations of his conviction from public records. Pursuant to Ala.Code 1975, § 32-5A-195(q), the trial court sets a hearing, takes testimony, and examines the facts to make a determination of "whether the petitioner is entitled to a license or is subject to suspension, cancellation or revocation of license under the provisions of this section"; i.e., upon proper proof, the trial court then may "enter an independent order of suspension." Chambers, 414 So.2d at 132. The purpose of the hearing in this case was for the trial court to make an independent determination of whether Bruno's license should be suspended, based on the evidence regarding the Georgia conviction, and, as the trial court stated during the hearing, not to "attack or collaterally attack his Georgia conviction."
The majority states that "[t]here is no such evidence to show that Bruno was `[u]nder the influence' or intoxicated" and that "we are unable, under the statute that prescribes punishment for such actions, to uphold a penalty where there is no record of conduct that would be punishable in Alabama." In contrast, however, I find that there was ample evidence before the trial court regarding the circumstances of Bruno's conviction in Georgia. This evidence, including the level of his blood alcohol content which was below the then statutory presumption that he was under the influence, could still have sustained a conviction for driving under the influence, pursuant to Ala.Code 1975, § 32-5A-191(a)(2). The record even contains a colloquy between the judge and the lawyers wherein all agreed, in open court, that, upon proper proof, a person could be convicted in Alabama with a blood alcohol level less than this statutory presumption.
After receiving ore tenus evidence, the trial court determined that Bruno's license should be suspended, and it properly dismissed Bruno's petition for a writ of mandamus. Because I believe the judgment of the trial court should be affirmed, I must respectfully dissent.
CRAWLEY, Judge, dissenting.
I dissent, because I believe the trial court was correct in affirming the decision to suspend Bruno's license.
The majority holds that because driving with a blood alcohol content of .08 percent was not an offense in Alabama at the time Bruno entered a plea of nolo contendere to DUI in Georgia, Bruno should suffer no collateral consequences in Alabama for his Georgia offense. For two reasons, I disagree.
First of all, Thompson v. State, 525 So.2d 816 (Ala.Cr.App.1984), aff'd, 525 So.2d 820 (Ala.1985), cert. denied, 488 U.S. 834, 109 S.Ct. 94, 102 L.Ed.2d 70 (1988), upon which the majority relies for its conclusion that the conduct underlying an offense is determinative, is not controlling here. In reviewing the Court of Criminal Appeals' decision in Thompson, the Alabama Supreme Court was called upon to construe two criminal statutes (Ala.Code 1975, §§ 13A-1-2(1) and 13A-5-9) and a rule of criminal procedure (former Temporary Rule 6, Ala.R.Crim.P.) to determine the scope of the Habitual Offender Act, a highly punitive sentencing enhancement measure. Here, however, we are dealing with a civil sanction that has a remedial rather than a punitive purpose, see United States v. Halper, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), and we are not required to adopt the same strict construction of the word "offense" which our Supreme Court used in Thompson.
Second, I believe that the Alabama legislature has clearly expressed its intent to expand, rather than to constrict, the types of out-of-state DUI adjudications that can result in suspensions of Alabama licenses. For example, § 32-5A-195(i) authorizes DPS to treat a foreign nolo contendere plea to DUI as the "equivalent [of] a conviction," even *449 though a nolo contendere plea is not admissible for any other purpose under Alabama law. See Singleton v. State, 622 So.2d 934, 935 (Ala.Crim.App.1992), writ quashed, 622 So.2d 935 (Ala.1993) ("Alabama follows the minority rule, which states that `a conviction based upon a plea of nolo contendere is inadmissible in evidence in other proceedings.'").
If our legislature considers a foreign nolo contendere plea to DUI relevant to an Alabama resident's fitness for drivingdespite the fact that the plea is relevant for no other purpose under Alabama lawthen it stands to reason that it would consider an Alabama resident's proven disregard of another state's drunk driving laws relevant to the resident's fitness for driving heredespite the fact that our DUI laws might be less strict. The legislature could reasonably conclude that a driver who evidences a disregard for one state's DUI laws will display the same disregard for our own drunk driving laws. Accordingly, the legislature could reasonably determine to impose the remedial civil sanction of suspending the resident's driving privilege.
NOTES
[1] We note that the conduct at issue occurred before August 9, 1995, when Alabama lowered its blood alcohol level that creates a legal presumption of intoxication to .08 percent.